Council, for appellants, even if you've already reserved your rebuttal time, let us know if you've done that. It will help us keep track. You may call the case. Good afternoon, and may it please the court, I would like to reserve five minutes for rebuttal. The District Court abused its discretion in this case in denying the 60B motion on the basis of law of the case. The reason that this was a clear error of law was that there was intervening Supreme Court authority, and we presented new evidence to the District Court regarding from post-conviction trial counsel to establish the ineffectiveness for failing to develop and present evidence in post-conviction. This court did not have the benefit of the Trevino v. Thaler decision the last time we were before the court, and by definition there cannot be law of the case. Because Trevino didn't exist, this court didn't have the opportunity to apply it and consider it in this case. This court, in the McGuire case noted, and in the Hennis case noted, that post-Trevino there was still an open question on Trevino's application. So again, that's further support that this question was open, and by definition an open question. Have we yet held that Martinez or Trevino applies to Ohio cases? This court has in a non-capital, non-60B circumstance, Gunner v. Welch, has held a remanded for a Trevino and Thaler hearing. So this court has. And this court intimated the same in McGuire when it noted that there's a distinction in Ohio law regarding claims that are dependent upon evidence outside the record, which I think is analogous to the 2255 Massaro case out of the U.S. Supreme Court, where if the record doesn't have the basis for the claim, then it's more amenable to post-conviction. And that's a critical distinction in this case because, as we noted in our brief, the prosecutor during the direct appeal, in opposition to this claim, noted that it wasn't amenable for direct appeal, that this is something that should be raised in post-conviction. And part of the Ohio Supreme Court's ruling, while it did address the merits to the extent it could, it noted that these arguments are based on pure speculation and there's nothing in the record that supports the sort of why did trial counsel present Dr. Ciappone. Your submission is that if you're right about the law of the case, we should remand it back to the district court and tell them they're wrong about that. Correct. Then what do you want to do? Well, then what the district court would do was conduct a plenary review of the 60B6 standard and determine whether or not we've demonstrated extraordinary circumstances, which we believe we have. And if they go that far, then they would look at the entire record, including what the parties agreed to in the federal court that was not present in the state court proceeding? Correct. And again, there's layer upon layer, so I'm not disputing that that's where it would end up. But because there's an overlap of the Martinez-Trovino analysis and the 60B analysis, so both of those analyses would have to be conducted by the district court. We'd have to demonstrate extraordinary circumstances to reopen the case to allow the post-conviction ineffectiveness claim to be heard. Your argument there is that it's a death case, et cetera, et cetera, and death is extraordinary by definition under what the Supreme Court has said, I guess. Well, that's one of them. Some of the others, Your Honor, again, we have a finding by the magistrate that we were diligent in presenting the 60B, so that's a factor that's in our favor. We have a threshold finding from the magistrate that it really appears that post-conviction ineffectiveness counts, that post-conviction counts were ineffective in this case. So that's another circumstance that's in our favor. Let me ask you this. Did the state courts, have the state courts ever, particularly the Supreme Court, decide this issue that you have, this claim that you have that Deardorff invited the jury to impose the death penalty in his final argument to the jury before they retired to consider the sentence in the case? Did the Supreme Court of Ohio or any Ohio court specifically address and discuss that issue? The Deardorff closing argument claim? Yes. You've got a claim, as I understand it, I don't know, what was it called, 2B, 2, anyway, in the claim, and our court addressed it, I addressed it in my dissenting opinion, that the claim was that Deardorff invited the jury to impose the death penalty when he said, in final argument, before they retired. What was the exact language there? I know I wouldn't want to go to jail for 75 years. I'd rather you put me to death. And you've got a claim based on that. Correct. And that's a different claim than 2B. Oh, it is? Yes. Okay. Yes. Well, it's got another number. But did the Ohio courts address that claim? Do you know? I will double check when I sit at table. My recollection is they did, but they didn't address it with, obviously, the consideration of Deardorff's deposition or other counsel's, why they argued what they did. And my recollection of the deposition was that they were so stunned by Dr. Cipone's testimony that it was, I think that deposition reads that they didn't know what to do and they didn't know how to react. So they were so surprised by it themselves that that impacted, you know, again, we're getting far afield into the merits, but, you know, after the Cipone, you know, it's a nuclear bomb in your case, goes off, they then present their client in an unsworn. He contradicts what Cipone just said. And then they get up in closing and argue what you just said and argue other things that we felt weren't effective. So the depositions and the evidence that we developed that was not developed by post-conviction trial counsel, the claim, again, and this is sort of a hybrid situation. Basically, if you got back down to the district court, as you're trying to do, you would have, you would look at all of the record and that part of it that came about, not in the state court, but only in the federal court. Assuming we get through the 60B extraordinary circumstances and the Trevino, we would file that evidence and ask that it be considered, yes. Anything else? Well, again, it would be the deposition to trial counsel, the deposition of Dr. Cipone, who post-conviction, his declaration indicates he never even contacted him or secured his records. You know, this court, the first time through, relied on defense counsel attempting to rehabilitate Dr. Cipone and sort of fix what went on. If they had had the records, they would have really been able to go after Dr. Cipone. Now, our claim on 2B is that if they knew what Dr. Cipone was going to say, he'd never hit the stand because he added nothing to their case, and what he did is blew up their case. And if you look at the prosecutor's closing arguments, they rely, especially the rebuttal closing, rely quite heavily on Dr. Cipone to rebut almost every piece of mitigation that was offered. And if you look at the trial court's opinion, the sentencing judge, Judge Ruhlman, relied quite heavily on Dr. Cipone's testimony to minimize the mitigation that was presented. And this was a case that had mitigation. There was remorse, there was sorrow, and he was 19 years old. There was evidence regarding bullying. I mean, this was not an insignificant mitigation case. And once Cipone's testimony was out there, it was over. I mean, and that's what Mr. Dierdorf said. My client was more than 19, was he? He was 19 when this offense occurred. Plus a few months. Correct, yes. And you couldn't execute him if he were less than 19? I think just 14 months earlier, yes, or 15 months earlier. And, again, we believe the law of the case was inappropriately applied here. And when you go to sort of the opportunity, I guess, to have this evidence to be heard, and I know we've asked for a remand, but just to sort of highlight what would be presented at the district court is, as Judge Merritt noted, this is a death penalty case, so there should be extra process that's due because of the nature of the case and the finality of the verdict. We do have a finding of diligence by the district court. What is it on which you base your – I'm trying to figure out – your claim is that defense counsel were just totally surprised by what Dr. Cipone said, but is your claim that they never talked to Dr. Cipone? How were they ineffective in dealing with Dr. Cipone such that we would be able to say, yeah, there's a real problem here? Well, and, again, we're getting deep into the merits. The problem with Cipone is they, according to their deposition testimony, they had no idea that he was going to testify to that, and there's a conflict which was never resolved because the evidence wasn't considered. Defense counsel, in my recollection, they said that we didn't really meet with Cipone before he testified and we were totally surprised. Cipone says, yeah, I met with him and I had to have told him. So where we sit as far as that dispute doesn't hurt us either way. It helps us. Either defense counsel didn't talk to him and they put on an expert that they had no idea what he was going to testify to, or Dr. Cipone is correct. I met with him and I told him what I was going to testify to, and they weren't effective for putting this expert on when he added nothing to their case. So that's where we are. And what's critical, and that's why we think it's an extraordinary circumstance, is the last time this case was in front of this court, you echoed what the Ohio Supreme Court said. The Ohio Supreme Court said, it's pure speculation. We don't really know why they did what they did. Talk about Deardorff. Deardorff, and the other gentleman's name escapes me. I apologize. So when trial counsel and we were able to obtain discovery and explain the why and get into the nuts and bolts of how it went down that led to Dr. Cipone testifying, and that's where we lost this claim the first time, that this court couldn't look at that evidence. And that's why this is a very unique, extraordinary circumstance compared to the other cases this court's considered. One of the things that interests me, I don't know the answer, but if the Ohio courts have not specifically addressed this problem that Deardorff invited the jury to impose the death penalty by the way he talked to them in his final argument, if that's not specifically addressed, then there is a question about whether that issue has been exhausted in the state court. If they haven't addressed it where you can tell exactly that they've specified that issue and addressed it, then you've got an issue here which I consider to be a very important issue myself, more important than Cipone and all that other stuff in here because that's the last thing the jury heard from Deardorff was inviting them to impose a death penalty on his client or words to that effect. And that's why I think that it's important to know exactly what the Ohio courts have said about that because they may think that's pretty important. I don't know. Your Honor, if I may, on the exhaustion question, my recollection is that that was addressed, and that was a part of our appeal last time. And this court noted in addressing another claim that there are no longer available remedies, this court held that I think at page 766 of this Mr. Moore's original opinion, and then at footnote 2 said that the failure of available remedies is applicable to every claim in this appeal. So this court held previously that there's not an exhaustion problem. Of any kind? Of any kind. What about Mr. Willey's point about jurisdiction of the court below? In order for there to be a jurisdictional problem, it has to be a new claim or a claim. And we're not talking about claims. We're talking about facts. And I think the best indicator of that is when they jointly stipulated to expanding the record before the district court, we argued those facts in support of our claim, and they never asserted that this was a successor, that we were trying to amend the petition through our pleadings or anything like that. And, in fact, they relied on trial counsel's deposition and other elements of the expanded record to argue against some of our claims. So this is about facts. It doesn't change the nature of the claim, and all it does is it fills in the gaps, this evidence fills in the gaps of what the Ohio Supreme Court said was pure speculation, which is the how and the why Dr. Cipone testified. And it doesn't change the nature of the ineffectiveness claim. It just explains or provides facts on whether counsel were deficient and whether they met their Sixth Amendment obligation. The same goes true for the closing argument claim. It goes to why did they argue what they argued. And the depositions bear out that it's a ripple from the Cipone bomb that went off at the mitigation hearing. And it would be different if we presented like an entirely new expert and said, oh, counsel weren't effective because they didn't get a ballistics expert. Then that would be a new claim. But all we're talking about is facts that support an already existing claim, and that's a very critical distinction. And why it's an extraordinary circumstance in our case is that when this court overruled the district court's grant of relief, this court indicated we don't know why Cipone was called. Well, we do, but this court felt constrained by Colin v. Pinholster from considering that evidence. And the reason that evidence couldn't be considered was post-conviction trial counsel had not presented it, as was their responsibility. And we have a declaration. To the state court. To the state court. And we have a declaration from post-conviction trial counsel indicating that it wasn't a tactical reason, that this was ‑‑ I'm familiar with this because I worked at the ‑‑  Ohio modified its post-conviction statute and made it a sort of concurrent direct appeal post-conviction proceeding. And it had a grandfather clause and literally thousands of post-conviction petitions and I think close to 100 capital post-convictions were due on the same day, on September 21, 1996. And as the record bears out, and I think we'll be successful in front of the district court on this, because we have a threshold finding by the magistrate that it appears to be ineffectiveness, but we can add much more to that record before the district court. Mr. Klein was only contacted to represent Mr. Moore in the post-conviction petition approximately 80 days before the post-conviction petition was due. He had never done a post-conviction petition before. He had been to one training session for a couple of hours. He was not given an investigator or a mitigation specialist to help in the assistance of the development of the post-conviction petition until he received a letter approximately a month before the post-conviction petition was due which said, you know, we'll help you out if you have a claim of actual innocence, which again is actual innocence under SLUIP is not what this case represents. So that's not an offer at all. Mr. Kopp, I think I've found the portion of our prior opinion that deals with the issue Judge Merritt has been asking about. And it appears to me that the issues were dealt with in post-conviction proceedings in the state court. We reviewed applying EDPA deference and that specific statement is mentioned and it was one of a number of statements that we used to say that Mr. Moore could not show either deficient performance nor prejudice on his ineffective assistance of counsel claim arising from his attorney's statements. Is that your recollection of what happened? Your Honor, I have the opinion if you would... Well, I'm on page 30 of the SLUIP opinion version. You may have the reported version. I think that's right. I agree with that. Okay. Judge Merritt says he agrees with that. I agree that the court here, this panel, dealt with the problem in that way. Okay. It doesn't mean I agree with it. I understand. I know. I know. It's on page 30. I think that's right, though. It appears that Judge Merritt doesn't have a question about the procedural posture. I have this... Don't use your time looking... I'm not disputing your... I just got curious and went back to see. The other equities in this case that we feel demonstrate extraordinary circumstances are, especially when it relates to Claim 2B, this was a close case. A magistrate judge recommended granting relief, judged the lot, affirmed it, and it was a two-to-one case here. So this is a close case. And when the basis of this court's opinion is we can't consider this body of evidence that can support your claim because of penholster, and, again, we're challenging that finding because of Trevino. We think Trevino sort of changes the context of that ruling. This is a close case that does demonstrate an extraordinary circumstance, especially when the basis of this court's finding was that we don't know why they caught Dr. Cipone in the first place, and the second aspect was remorse or residual doubt and remorse were not a mitigation theory. According to defense counsel, it was. And according to, again, if you look at the rebuttal closing at the mitigation phase, Mr. Dieters quite forcefully and strenuously says that they're trying to sell you a bill of goods. They're trying to sell you residual doubt and remorse. And what do we know from Dr. Cipone? Dr. Cipone demonstrates that that mitigation just has no effect whatsoever. And it creates the impression with a jury that your client lied to them in the unsworn and is not being honest and is not being sincere in their expression of remorse. And remorse, minus Cipone's bomb, remorse is a very critical mitigating factor. It's something that jurors want, and this took away that off the table. It's two things that occurred here. It minimized the mitigation that was presented and put a very, very harmful ballast on the scale in favor of death. And remorse from a 19-year-old is something that would have been very compelling mitigating evidence. At this point, if there are no further questions, thank you. Thank you, Counsel. May it please the Court. Charles Willey, Assistant Attorney General, arguing on behalf of the Warden. Your Honors, the core issue presented here is whether the petitioner presented genuine grounds for relief under Rule 60B. And the answer to that question is indisputably he did not. Now, the ramifications for that are this. I do think he disputes that. Yes, he does, but let me say why I believe it's indisputable. It's not indisputable. In this sense, Counsel is very candid here. He's acknowledging that he's asking for a second merits resolution of a claim that this Court reached on the merits and denied relief. He is saying that this Court can do so under Rule 60B. The answer to that is the Supreme Court of the United States has said no. The Supreme Court of the United States in Gonzalez v. Crosby has said that a Rule 60B can be used in habeas corpus case consistent with the Anti-Terrorism and Effective Death Penalty Act, but it must be used consistent with the AEDPA. And the AEDPA says that if a previous claim has been presented in a petition and has been adjudicated on the merits, it cannot be the subject. What would you make of all the discussion in our panel's decision about Penholzer, then, and how all of this other evidence is not to be considered and is not being considered? I mean, it would seem that that is somewhat contrary to the point you're making. It is not, Your Honor. Let me explain why. In terms of a Rule 60B, there's a threshold question, and that threshold question is incredibly important because in most cases the jurisdiction of the court will depend on it because the AEDPA also requires that before a district court can consider a second petition, the petitioner must meet certain standards and a court of appeals, this court, must approve it before a district court can consider a second petition. So the bottom line becomes, what's a second petition, and what do we mean by a claim that was previously presented? In Gonzales v. Crosby, the Supreme Court answered that. The Supreme Court said that when a petition contains a claim which challenges the state court's conviction and sentence, that's a claim. And so when a prisoner in a Rule 60B essentially asks to again revisit the claim, again or present a new claim for that matter that challenges his underlying conviction and sentence, what he's done is he has filed the equivalent of a second petition. I think that if the decision of the district court got half of the facts that are now available, based upon a third or 10 percent or whatever of the facts that are now available on the issue, that that would mean that every time that same claim is made, even though it's supported by different facts, it is a second petition. Yes, and here's why, Your Honor, because... That's not what Gonzales says. What it says, Your Honor, is this, is that Gonzales says that when a claim has been properly adjudicated, and this court held that, not that the district court erred, no, this court held the first time that indeed the pinholster case precluded the consideration of evidence not presented to the state court. Now, Mr. Comp's argument that he's making here today, the argument that he made to the district court was the argument that he made to this court on appeal. As a matter of fact, Mr. Comp, in his motion for Rule 60B relief, said the Sixth Circuit erred by holding that the evidence not presented to the state court could not be considered now. He alleged that this court erred, and in Gonzales v. Crosby... He's a flying pinholster. Yes, and in Gonzales v. Crosby, the court said, or the Supreme Court has said, when a petitioner says, my Rule 60B is based on the court's previous error in denying my first habeas corpus petition, that's the second petition. And that is consistent not only with the AEDPA, but it's also consistent with pre-AEDPA law. It has been well established that Rule 60B is not a substitute for an appeal. Rule 60B is not an opportunity to present new arguments. What about the argument that Trevino somehow changes pinholster? Well, first of all, in the first time of appeal, Trevino was pending. This court permitted supplementary briefing on the issue of whether Martinez v. Ryan affected the application of pinholster. This court permitted supplementary briefing on that question, and after that supplementary briefing, the court held that Martinez v. Ryan was not an end around, if you will, to pinholster. But Trevino... In a different case, Trevino v. Thaler was an expansion of the right to present these facts. I mean, there's no question about that. That's correct, Your Honor. As a matter of fact, during his appeal to this court, the petitioner asked to stay the case to see whether Trevino... to wait for the decision of Trevino. The court did not do so. In the petition for writ of certiorari, the petitioner argued because Trevino had been decided, and in the petition for writ of certiorari, to review this court's previous judgment, the petitioner argued that Trevino changed the case, and the Supreme Court of the United States denied cert. Now, I recognize... That is not... That'll get you a cup of coffee, maybe, but... You're exactly right, Your Honor. It has no precedential value, but it's very important in this case, because what does it show? It shows that this issue was litigated the first time around. This issue was present, and if there's anything about the ADPA, it's this. Can it be present when it wasn't decided? It was argued, Your Honor. It was raised as a question, and under Rule 60B, one cannot use Rule 60B as a substitute to an appeal. We didn't make any decision whatsoever about the Trevino-Thaler problem. None. Didn't say a word about it. And, Your Honor, if this were... If we were on appeal, if this was the first time around, then that would be pretty important, but this is a Rule 60B that's filed after a judgment has been rendered, and there's a statutory prohibition against asserting a claim for the second time that it's been adjudicated on the merits in the first instance, and it's unquestionable this claim was adjudicated on the merits by this court. Therefore, under the Anti-Terrorism and Effective Death Penalty Act, the district court had no jurisdiction to review this claim. Now, petitioner argues, appellate argues, that, ah, yes, but Martinez v. Ryan could change all that. Well, Martinez v. Ryan's not relevant here, because Martinez v. Ryan and Trevino are an exception to the U.S. Supreme Court's procedural default doctrine. That is what those cases applied to. This claim was not held to be defaulted. This claim was adjudicated on the merits. So those cases really have no applicability to this case. Now, and the court correctly recognized that in its decision in this case. This court held that Martinez v. Ryan is not applicable to, is not an exception which allows for the consideration of evidence outside the state court record when a claim has been adjudicated on the merits in state court. This court rightly recognized that the ADPA, the statutory foundation of pinholster is the AEDPA standard of review, which is statutory and not made by, is not a part of the procedural default doctrine. Well, the Martinez case, we said, was not inconsistent with pinholster, and the court applied the pinholster case to not allow the evidence to be considered. That is correct, and that's still the same after Trevino. Trevino, in essence, expanded. It is true that Trevino expanded the scope of the procedural default exception that the Supreme Court recognized in Martinez. But let's go back to the basic point, and that is it was an exception to allow for the merits consideration of a claim that was procedurally defaulted. This claim was not. The petitioner's ineffective assistance of trial counsel claim regarding Dr. Chapone was not held to be procedurally defaulted, not by this court and not by the state court on direct appeal. The petitioner raised this claim on direct appeal. It was decided on the merits. Now, it is true, certainly. It is absolutely true that one can debate Ohio's procedures for raising ineffective assistance of trial counsel claims. One can debate whether that's an appropriate rule. Perhaps the rule should be in Ohio that these claims are best reserved for post-conviction, which is my understanding of the federal rule. But the fact remains that in Ohio— I thought the Ohio rule was that you could present it if you had the facts on ineffective assistance of counsel, and you didn't have to have post-conviction or a collateral attack to present new evidence. You could present it, and the court would adjudicate it on direct appeal. But it didn't preclude the other. So my understanding of Ohio law is it permits both, right? Your Honor, you're right with one reservation. It's not simply that Ohio permits raising ineffective assistance of trial counsel on direct appeal. Ohio law requires it if it's indeed apparent from the record. Now, this does present—frankly, it does present a dilemma for counsel because a counsel must make a professional judgment as to whether he's going to run the risk of later attempting to raise the claim in post-conviction and have it be found res judicata. So that is a judgment that has to be made by counsel. But in some instances, that judgment is reasonable, certainly. Well, it forces the lawyer to raise it on direct appeal, what he's got, and then it forces collateral post-conviction counsel to raise it again after they're able to go out and scur up and find the additional evidence. That's what's happening in Ohio. In a way, Your Honor, there are maybe not so much of late, but there have been instances in which counsel made reasonable strategic decisions to raise such claims on direct appeal. I point to State v. Johnson, which is a case in habeas corpus which this court found ineffective in the presence of counsel, and the claim was originally raised on direct appeal successfully. There was a retrial, but— I learned sometime within the last 10 days, I think, but I have no idea now if I'm remembering this exactly right. If you're going to—if you want to rely on evidence that has not yet been developed on direct appeal, in Ohio you simply move for the court to order that a hearing be conducted. Yes, that's an option. Yes, Your Honor, that's an option on direct appeal. And also, Ohio does have an—we're talking here about Ohio's basic race judicata. In Ohio, if you don't raise a claim on direct appeal, which you could have, then if you attempt to raise a claim on—and that's not just ineffective counsel claims. That's every claim. If you attempt to raise it on post-conviction, it can be held race judicata, but there is an exception. If you present cogent evidence outside the record, then you can succeed in overcoming the race judicata bar. Now, my experience has been most attorneys in capital cases, if they believe that they run the risk of bringing in ineffective assistance of trial counsel claim on direct appeal, if they feel that there's a risk that somehow they should have brought it, they will bring it, and then they will bring it in post-conviction in an attempt to support evidence outside the record. Well, that's the smart thing. And in this particular—but, however, in this particular case, it's not disputed that the claim was decided on the record by the Supreme Court of Ohio on the merits in this court. Most importantly, this court held—considered the merits of the claim and held that the Supreme Court of Ohio's adjudication— You can look at the whole record that was before the district court. And, you know, Your Honor, the thing about the Anti-Terrorism Effective Death Penalty Act is there is no exception for claims that were once raised and adjudicated in the first petition and decided on the merits. There's no exception for those claims. The statute is clear. The statute says a claim that was presented previously cannot be presented again. Now, are we saying that this is a new claim? Of course not. We're not saying it's a new claim. It's obvious it's the same claim that was raised before the district court previously, which the district court granted relief on, in which this court reversed. It's the same claim. And as a result, because it's the same claim, then— It's not the same evidence. That's the rub, Your Honor, in this, is that a claim— there's many instances in which a claim can be supported by new evidence. Yes. But the Anti-Terrorism Effective Death Penalty Act and the Supreme Court of the United States has recognized so. That exception does not apply. For if a claim has been adjudicated on the merits— You have Trevino v. Thaler. I mean, Trevino v. Thaler is on that subject that you can go ahead— it expands what you can do outside of the direct appeal. And, Your Honor, in Gonzales v. Crosby, I believe, the court noted that, yes, if you file the Rule 60B, in which you're not challenging the merits determination previously by the Court of Appeals, but you're challenging some defect in the process, for example, like— and I believe this was an example that was given in the case. If the court previously found a claim to be procedurally defaulted, if the district court and the Court of Appeals previously denied relief on a claim in the first petition because it was procedurally defaulted, then perhaps a Rule 60B might be a way to challenge that determination because that would be a procedural defect if it was an error. But that's not what happened in this case. This court did not hold that his claim did not merit relief because it was defaulted. This court held that it did not merit relief because it had no merit. And so under those circumstances, under the Anti-Terrorism and Effective Death Penalty Act, there's no room for wiggle. The claim was adjudicated, and it cannot be the subject of the second petition. And to add to that, this is a case where, in the cert petition that was filed by the petitioner, the petitioner did make an argument. Now, absolutely, it would not be binding in any sense when the Supreme Court denies certiorari. We understand that's not a merits determination. But what it does show is this. The claim was raised. The claim was adjudicated. The claim was denied on its merits. And as a result, under the AEDPA, it cannot be the subject of a second petition. You guys argued so hard before that Penhoser forbid any consideration of any facts other than those that were in the record in the case. Yes. Why did you, if you were, if you didn't care if it was all the same claim, all the same facts, why did you argue so hard, which you did? You did a good job of arguing, and our court accepted that, that Penhoser forbid that. So I don't, I think it's a little, you know, you argue one thing then and a completely different thing now. Your Honor, it's not inconsistent in this sense. The issue in terms of whether something is one or a different claim is important the first time around for a lot of reasons. For example, is the prisoner presenting a claim, and we're talking about the first petition, what is he saying? What claim is he presenting? Is he presenting when he presents new evidence, in other words, evidence that was not presented to state court? Is he simply presenting evidence in support of the claim that he actually presented? Or is he changing the claim? Because that does have important implications. As you brought up yourself, Your Honor, it has the exhaustion implication, many implications, default implications, but once that initial habeas corpus procedure is done, once it's over and whatever claim was presented was adjudicated on the merits, then really whether it's the same claim at that point, there's new considerations involved. Under the ATBA, there's new considerations. And obviously if it's the same claim for the purposes of the ADPA for a second petition, it is a catastrophic consideration because it's an absolute bar. I mean, that is the statute, and that's the law. Now, I have to tell you this. I can recall in this case, the law was somewhat unsettled. I had made the arguments. I think our office had made the arguments before Pinholster that under the standard of review, you really should consider only the evidence that was presented to the state courts. I think I used the example. I said, the example I used is my son came home one time, and he was late, and I said, I find out later, I chewed him out, and I find out later that he had a good reason. And I said, why didn't you tell me he had a flat tire? He goes, well, you were pretty upset when I came in at 2 o'clock in the morning. Didn't get around to tell you. Well, I mean, I thought, well, that would be, it was pretty unreasonable. Can't say it was unreasonable and jumping on him because he didn't tell me that he had the reason. You weren't imposing the death penalty on him. Well, that's true, although he probably felt that I was angry enough to do it. But at that time, it was unsettled. We took a look at it. We took a look at the evidence from the depositions. And Petitioner has, I mean, we understand that he's arguing that this really supports his claim that ineffective assistance of counsel. We took a look at it, and we thought that it didn't because we thought that the Petitioner's trial attorney explained that he indeed talked to the doctor. He indeed interviewed him, and he was shocked. He was surprised when the doctor said that. But he did not give the impression that he did not prepare. In his deposition, he said he did talk to the doctor, and he was quite shocked that the doctor said what he said. But at that time, so we thought perhaps this evidence is not so compelling. And indeed, this court in a footnote in the original decision, this court did note that. The court said it didn't look like that the evidence that was presented outside the record really did show that the claim had merit. So the court did notice in passing that even the evidence outside the record was not compelling. But be that as it may, Penholster changed everything, Your Honor. Penholster came down and flat out said that you can't do it because of the statute. Now, Mr. Kopp has made a pretty good argument, I think. I thought it was a pretty good argument when he pointed out that in Keeney v. Tamayo-Reyes, the Supreme Court applied the cause and prejudice standard and test, not only that they had used for defaulted claims, also applied that to a prisoner's failure to develop evidence in support of a claim that was presented to state court. And Mr. Kopp has made an argument, well, you know, that cause and prejudice, Martinez v. Ryan does talk about that. But there's one critical distinction. The default doctrine was a judicially made doctrine. The statute is the statute, as this court pointed out. And the procedural default doctrine is subject to Supreme Court's changes and exceptions. But the statute is not. The statute is subject to their change of interpretation. That is true, Your Honor. That is true. But in Pinholster, the court interpreted it in such a way. And recently in the Sean Carter case, as an example, the issue at the Sean Carter case was whether there was a reason to abate the proceedings to look at a petitioner's competence. And almost as an aside, the Supreme Court Justice Thomas said, oh, you know, really, you wouldn't really need to stay this case anyway because these claims were decided on the record in state court. And so regardless of whatever the prisoner could add now, it would be irrelevant because under Pinholster the federal court would be limited only to the record evidence that was presented in state court. So does the Pinholster case have grave consequences? Yes, it does. But we go back to our original issue here, our threshold issue here is this. Before we even look at these issues in detail, can we say that this prisoner presented a viable or a genuine claim, genuine ground for relief under Rule 60B? And we can say he did not because, again, and mainly because he's actually really requesting a second bite at the apple for a claim that was decided on the merits. And the ADPA says you can't do that. And even prior law said the same thing, that Rule 60B is not a second appeal. Rule 60B is not an opportunity to present more evidence and more arguments in support of a claim that was already adjudicated. And that is what we have here. Now, in terms of law of the case, you might say this, the law of the case is a legal pigeonhole that you can put this. All of my arguments can be put in the law of the case pigeonhole as well. I mean, typically the law of the case, the exceptions to the law of the case, extraordinary exceptions, new law, intermittent decisions, yes. But none of those things apply here because Martinez versus Ryan and Trevino weren't intervening decisions because they didn't involve claims that were decided on the merits. So you can put it in the law of the case pigeonhole or the ADPA jurisdictional or the abuse of discretion. I mean, here the district judge didn't abuse his discretion for denying 60B because the district judge essentially and the magistrate judge essentially said, well, look, the Sixth Circuit pretty much decided this question before. They looked at it. They decided it. And they found that the claim of ineffective assistance to trial counsel was. . . I don't believe that's what they said. I think you're taking a little liberty with what the district court magistrate said there. The magistrate. . . What are you. . . In his report and recommendation and supplemental report and recommendation, the magistrate judge essentially held that the arguments. . . The law of the case. That's all he held. Well, and he held specifically that the arguments that were being made were essentially addressed by this court. In other words, that somehow the Martinez versus Ryan exception for procedural default was also an exception to pinholster. And he said that this court essentially found that it wasn't and that Trevino did not change that because Trevino was an extension of Martinez versus Ryan, but that extension did not initially or the original rule did not apply in this circumstance. Here the situation is simply this, is that Martinez versus Ryan talks about defaulted claims, and this claim was not held to be defaulted. It simply was not. And as an exception, did the Supreme Court in Trevino or Martinez suggest that the ineffective assistance of post-conviction counsel. . . What was held to be defaulted were the facts that were accumulated after the record was made in the state court and in the Supreme Court. To that extent, it was defaulted. Yes, but to that extent. . . But it wasn't his default which precluded this court from considering the facts. It was the statute itself. And pinholster is a default operation, and we relied on pinholster, which says you are defaulted in connection with the facts that are not developed in the state court. Your Honor, pinholster is, with respect to Your Honor, pinholster does involve defaults, but it's a default based on a statute and a standard of review. I mean, this court held, believe me, I can tell you this, I stipulated and jointly filed that information. I did that. And so there's no question that if it would have been a question of default, I waived it. But as this court held, you can't waive the standard of review. And in my justification, I didn't realize the standard of review at that time. I didn't have a Supreme Court that said that the standard of review did limit the federal court to the state court record. Pinholster did supply that, and that, of course, occurred after the. . . But you're basically arguing that all the facts that were developed later, which were defaulted by the pinholster case in our, according to what we said, you're really just arguing that those facts shouldn't make any difference. That's the whole argument you've got here. I'm making three arguments, Your Honor, I am. They're all essentially saying this, that those facts cannot overcome the AEDPA. Those facts cannot supply relief under Rule 60B if you just ignore AEDPA and look at that, and if you ignore both. If you looked at the merits of those facts, they would not show that the trial attorney was ineffective. So on all levels, yes, Your Honor, I guess I am arguing that those facts, no matter how you slice it, don't make a difference. But in this sense, Your Honor, we would ask that the court affirm the judgment of the district court and essentially deny relief in this case. Thank you. Thank you, counsel. Rebuttal. May it please the court, to address Judge Gibbons' question regarding state law, in Ohio under State v. Ishmael and this court recognized in Ritchie v. Bradshaw that a direct appeal record is limited to the record that was in front of the trial court. You can file a separate motion, though, in that context, correct? But it can only expand the record with materials that were in front of the trial court. Oh, okay. So, for instance, jury questionnaires. So there's a limit. I did not understand that. Correct. You're right. So you are correct. You can expand the record, but only with materials that were in front of the trial court, like jury questionnaires, or let's say a motion gets misplaced, that kind of thing. Second point, if I heard the Attorney General correct, that if you raise it on direct appeal, then you pick up a procedural default if you re-raise it in post-conviction. In this case, where a direct appeal denies it on the basis of partly saying that this is pure speculation, any post-conviction counsel would look at Willans v. Hall, Bell v. Cohn. Those are cases from the U.S. Supreme Court that held that a race judicata finding in those circumstances is not a procedural default. So you would raise the claim. And if the state court wanted to inappropriately apply a race judicata bar, that's their business. But that's not something the federal court should give credit to under Bell v. Cohn and Willans v. Hall. And it's not something that should dissuade an effective post-conviction attorney from doing their job. Regarding the statute v. Keeney v. Tamayo-Reyes, I would point the court to Williams v. Taylor, which is an AEDPA case and relied on Keeney to note that you can procedurally default facts just as well as you can claims. So to the extent the Attorney General today is arguing that AEDPA has overruled, there's no existence of Keeney v. Tamayo-Reyes post-AEDPA, Williams v. Taylor rebuts that. Regarding what we did file, we did ask this court to wait for Trevino. We did file a cert petition based on Trevino, one of our cert questions. I think it was our second or third cert question. That demonstrates our diligence and our client's diligence in trying to litigate this issue. It doesn't demonstrate that it's law of the case. The Attorney General is trying to have it both ways. In the Shepard 60B motion, 60B appeal, they argued that the failure to file a cert was a basis to demonstrate lack of diligence, and that became a basis of this court's denial of the 60B, that lack of diligence. So the Attorney General can't have it both ways. What it does reflect is that we were diligent in the time we filed this, and that supports what the magistrate judge held regarding our diligence on the 60B. Regarding their Gonzales argument, I would point the court to page 532, footnote 4. I think Mr. Woolley did reference that. What we're talking about, and again, I candidly admit we admitted in our briefs, we admitted it before the district court, we are a hybrid situation where we're talking about facts that support a claim. So, you know, I can't hide from that. I have to embrace that. And our position is that Penholster acted as a bar against consideration of these facts. And all we're asking, and this touches upon a Gonzales question, is we're attacking that impediment. We're not here litigating the merits. We're saying that post-conviction counts were ineffective, and because they were ineffective, that procedural impediment prevented this court from considering all the facts. And that's all we're doing. And once we get through, like in response to Judge Merritt's questions earlier, if we survive, if we go back to the district court and we survive the 60B analysis, the extraordinary circumstances, and then we survive the Trevino analysis, then we get merits review. And those are high hurdles to meet. Cause and prejudice is not met every day. So we understand that, but we're just asking for our opportunity to have a full and fair opportunity to present that. As to getting a first bite or a second bite, I forget what. I think he called it the second bite. We want the first bite with the full record. That's it. This is a death penalty case. We have a very unique circumstance, and all we're asking for is the opportunity to have our 60B heard. And if we survive that extraordinary circumstances standard, to have the opportunity to satisfy Trevino and lift that procedural bar that prevented this court from considering the merits. If there are no further questions, I want to thank the court. I know your time is much more valuable than ours for moving the argument, and I know it's later in the day than you usually argue. Mr. O'Hara and myself appreciate the accommodation to the conflict. Actually, it accommodated me. I was able to fly in in the morning and have enough wiggle room to be sure I would get here. We thank the court for accommodating that. Well, you know, we just aim to please here. You gentlemen always do a good job on both sides. Thank you very much. The case will be submitted, and the clerk may adjourn the court. Thank you.